STATE OF CALIFORNIA, DEPART-
MENT OF EDUCATION, Petitioner,

v.

William J. BENNETT, Secretary, U.S.
Department of Education,
Respondent.

No. 87–7133.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 7, 1987.

Decided June 20, 1988.

Michael E. Hersher, California Dept. of Educ., Sacramento, Cal., for petitioner.

Effie Forde–Williamson, Office of Gen. Counsel of U.S. Dept. of Educ., for respondent.

Before WALLACE, NORRIS and THOMPSON, Circuit Judges.

DAVID R. THOMPSON, Circuit Judge:

The State of California Department of Education ("California") petitions for review of a final decision of the United States Secretary of Education ("Secretary"). The Secretary directed California to refund $699,450 to the United States Department of Education ("Department"). The Secretary concluded that these funds were not spent in accordance with the applicable grant requirements of Title I of the Elementary and Secondary Education Act of 1965, Pub.L. No. 89–10, 79 Stat. 27 (1965) (as amended) ("Title I"). We have jurisdiction under 20 U.S.C. §§ 1234d(b), 2851(a). We affirm in part, reverse in part and remand in part.

I

FACTS AND PROCEEDINGS

Title I served as a vehicle for distributing large educational grants from the federal government to local educational agencies. It was in effect from 1965 until 1981, when it was succeeded by Chapter 1 of the Education Consolidation and Improvement Act of 1981. Pub.L. No. 97–35, 95 Stat. 464 (1981); *see Bennett v. New Jersey,* 470 U.S. 632, 634 n. 1, 105 S.Ct. 1555, n. 1, 84 L.Ed.2d 572 (1985). The present petition concerns expenditures made by the Los Angeles Unified School District ("District")

during fiscal years 1981 and 1982, which ran from July 1, 1980 to June 30, 1982. Chapter 1 retained the portions of Title I relevant to this appeal. For clarity, we refer to the legislation in effect for the period of this appeal as Title I. We have explained in detail the structure and background of Title I elsewhere. *See California, Dep't of Educ. v. Bennett,* 833 F.2d 827, 828–29 (9th Cir.1987); *Department of Educ., Hawaii v. Bell,* 770 F.2d 1409, 1412–13 (9th Cir.1985); *see also Bennett v. Kentucky Dep't of Educ.,* 470 U.S. 656, 659–60, 667–69, 105 S.Ct. 1544, 1547, 1551–52, 84 L.Ed.2d 590 (1985); *Bennett v. New Jersey,* 470 U.S. 632, 634–36, 105 S.Ct. 1555, 1557–58, 84 L.Ed.2d 572 (1985).

Under the portion of Title I relevant here, California gave assurances to the Secretary that the school districts to which it distributed Title I funds would spend those funds in accordance with all of the relevant guidelines and restrictions. *See* 20 U.S.C. § 2802. Local school districts then applied to California for Title I funds. *See* 20 U.S.C. § 2811. As part of this process, California approved three types of expenditures by the District that are now at issue: food and lodging for parent and staff training conferences in the greater Los Angeles area, expenses for multi-purpose training conferences, and student field trips. The Department's regional inspector general and his staff conducted an audit of these expenses. In March 1984, he issued an audit report ("report") recommending that certain expenditures be disallowed and explaining the basis for his recommendations. California was permitted to comment on the report. The portions of the report relevant to this appeal were then endorsed and adopted by the Assistant Secretary for Elementary and Secondary Education ("Assistant Secretary") in his final audit determination ("final audit") of September 1984. California appealed this determination to the Education Appeal Board ("Board"), which rendered its decision in November 1986. The Board's decision affirmed the Assistant Secretary's final audit regarding the food and lodging expenses and the multi-purpose conference expenses, but it rejected the final audit's disallowance of the field trip expenditures. The Secretary then reviewed the Board's decision. He affirmed the disallowance of the food and lodging and multi-purpose training expenditures; however, he disagreed with the Board regarding the field trip expenses. He disallowed these expenditures as the Assistant Secretary had done. The Secretary's action was the final action of the Department.

## II

### STANDARD OF REVIEW

■ When the Secretary adopts the findings and decision of the Board, we will affirm his action if the findings of fact are supported by substantial evidence, 20 U.S. C. § 1234d(c); *Bell v. New Jersey,* 461 U.S. 773, 792, 103 S.Ct. 2187, 2198, 76 L.Ed.2d 312 (1983); *California v. Bennett,* 833 F.2d at 830, and if the decision is otherwise in accordance with applicable law. *See Bell v. New Jersey,* 461 U.S. at 792, 103 S.Ct. at 2198; 5 U.S.C. § 706. "[This court has] jurisdiction to affirm the action of the Board or the Secretary or to set it aside, in whole or in part." 20 U.S.C. § 1234d(d); *see also* 20 U.S.C. § 2851(c) (similar language).

■ The Secretary, "for good cause shown," may modify or set aside the decision of the Board in whole or in part. 20 U.S.C. § 1234a(d). If the Secretary modifies or sets aside the Board's decision without good cause, then section 706 of the Administrative Procedure Act requires that we set aside his action. *See* 5 U.S.C. § 706(2)(A), (C). If the Secretary makes findings of fact, these findings, "if supported by substantial evidence, shall be conclusive [on this court]; but [this] court, for good cause shown, may remand the case to the Secretary to take further evidence; and the Secretary may thereupon make new or modified findings of fact and may modify his previous action...." 20 U.S.C. § 2851(b). If the Secretary does make new or modified findings, or modifies his previous action, "[s]uch new or modified findings of fact shall likewise be con-

clusive if supported by substantial evidence." *Id.*

Findings of fact made by the Board, "if supported by substantial evidence, shall be conclusive [on this court]; but [this] court, for good cause shown, may remand the case to the Board to take further evidence, and the Board may thereupon make new or modified findings of fact and may modify its previous action...." 20 U.S.C. § 1234d(c). If the Board makes new or modified findings, or modifies its previous action, "[s]uch new or modified findings of fact shall likewise be conclusive if supported by substantial evidence." *Id.* Whether or not the Secretary's and the Board's findings of fact, when made, are supported by substantial evidence is relevant to our determination of whether or not the Secretary had good cause to set aside the Board's decision under section 1234a(d).

■ We give considerable deference to an agency's interpretation of its own regulations. *See California v. Bennett,* 833 F.2d at 830; *McCoog v. Hegstrom,* 690 F.2d 1280, 1284 (9th Cir.1982). But courts are not bound by an agency's interpretation. "[T]he deference due an administrative interpretation depends upon its consistency with earlier agency pronouncements, the purpose and wording of other agency regulations, and the purposes of the relevant statutes." *McCoog,* 690 F.2d at 1284 (citations omitted).

### III

### ANALYSIS

#### A. *Food and Lodging Expenses*

In disallowing the amounts spent for food and lodging, the Secretary concluded that seven District-sponsored conferences could have been held at District facilities within a reasonable commuting distance of the participants' homes. The Secretary

also disallowed food and lodging costs for two conferences that were sponsored by a statewide organization and were held in Anaheim. These expenditures were disallowed because Anaheim was within a reasonable commuting distance of the District. For all nine conferences, the Secretary concluded that meals and overnight lodging to attend conferences within a reasonable commuting distance were unnecessary. Department regulations require that Title I expenditures be "necessary and reasonable," 34 C.F.R. pt. 74, App. C, pt. I, C.1.a (1981), and that they not be "imprudent, extravagant, excessive, or wasteful." 34 C.F.R. § 200.71 (1981) (formerly 45 C.F.R. § 116a.22(b)(4)(ii) (1980)).[1]

California presents three arguments challenging the disallowance of its expenditure of Title I funds for food and lodging expenses for the conferences. First, California argues that the District and the participants received non-economic benefits by holding the conferences at hotels rather than at District facilities. Second, California argues that the enormous geographic size of the District made daily commuting to and from the conferences unreasonable for some participants. Third, California contends that since the seven conferences it sponsored served Title I purposes, California must be given credit for the costs that would have been incurred had the conferences been held at District facilities.

#### 1. *Non–Economic Benefits*

■ The Department does not contest that holding conferences at hotels rather than at District facilities encouraged conference participation, a non-economic benefit claimed by California. The regulations, however, require that the expenditure of Title I funds be "necessary and reasonable." 34 C.F.R. pt. 74, App. C, pt. I, C.1.a (1981). The auditors concluded that, based on the regulations, using Title I funds to pay food and lodging expenses to encour-

---

1. The regulations relevant to this appeal were moved from Title 45 to Title 34 on March 30, 1981. Minor alterations in wording not relevant to this appeal occurred at the time of transfer. Parts 116 and 116a of Title 45 became parts 200 and 201 of Title 34. *See* 46 Fed.Reg.

5,136–5,235, 18,976 (1981). We cite to Title 34 and indicate where the earlier version appeared if applicable. Title 34, part 74, Appendix C was in effect throughout fiscal years 1981 and 1982, the period relevant to this appeal; it previously appeared at Title 45, part 74.

age participation at conferences was not "allowable or reasonable." California had the burden to present evidence to support its challenge to this determination. *See* 20 U.S.C. § 1234a(b); 34 C.F.R. § 78.16 (1981).[2] It did not present any evidence in support of its "non-economic" benefits contention. It failed, therefore, to justify the food and lodging expenditures on this basis.

## 2. *Commuting Distances*

California next argues that its expenditures for food and lodging were necessary and reasonable, because the District is so large that it was unreasonable to require participants to commute to and from the conference sites on a daily basis. California represents that a normal commuting distance is 25 miles. Even if we were to accept this representation, however, seven of the conferences were District-sponsored and could have been located within the District. California presented no evidence to show the number of participants who would have had to endure a 25–mile, or longer, commute to such centrally located conference sites. Thus, there was no evidence upon which the Board could have determined that it was necessary or reasonable to pay food and lodging costs due to the "long commute" participants had to make to attend these conferences. California had the obligation to present evidence to support its "long commute" theory. *See* 20 U.S.C. § 1234a(b); 34 C.F.R. § 78.16 (1981). It did not do so. We, therefore, reject California's "long commute" argument as it applies to the seven District-sponsored conferences.

The two state-sponsored conferences, however, require a different analysis. These two conferences were held in Anaheim, outside the District, and were sponsored by a statewide organization. The Department implicitly admitted that Anaheim was outside the normal commuting distance for some of the participants. The auditors' report indicates that approximately ten percent of the participants who attended these two conferences could have reached Anaheim only after commuting farther than a normal distance. The District could not relocate these conferences within the District, because it did not sponsor them.

Department regulations permit reimbursement for travel expenses when they are part of a "cost effective" effort to consolidate the training programs of more than one district. *See* 34 C.F.R. §§ 201.-161(b), 201.162(b)(4) (1981). The Department did not challenge the subject matter or the cost effectiveness of the two Anaheim conferences. Therefore, for these two conferences, California's expenditure of Title I funds for food and lodging for those participants who lived beyond a reasonable commuting distance of the conference sites should be allowed. On remand, the Board should receive evidence to determine the number of participants who would have been required to commute more than a reasonable distance to attend these conferences, and California's reimbursement obligation should be adjusted accordingly. *See* 20 U.S.C. § 1234d(c). For example, the auditors estimated, or perhaps knew precisely, the number of participants who attended the Anaheim conferences from the San Fernando Valley, which the Department did not claim to be within a reasonable commuting distance of Anaheim. California should not be required to reimburse the amount of food and lodging expenditures for these participants.

## 3. *Imputed Costs*

California presented to the Board "projected charges" that would have been incurred for a hypothetical training conference held at a District facility. These projections included four basic categories of expenses: fair market rental costs of District facilities, labor costs, food costs, and reimbursement of certain expenses incurred by conference participants. California argues it would have had to incur these costs even if the conferences had been held at District facilities; therefore, it contends, it should get a credit for these "imputed costs" against the amount of Title I ex-

**2.** Title 34, pt. 78 appeared previously at Title 45,     pt. 100d.

penditures to be reimbursed. Except for fair market rental charges for District facilities,[3] crediting California with these "imputed conference expenses" is supported by the Department's regulations. *See* 34 C.F.R. § 200.60 (1981) (earlier version at 45 C.F.R. § 116.36 (1980)). Such credit is also consistent with the position taken by the Secretary under analogous circumstances. *See Bennett v. Kentucky Dep't of Educ.,* 470 U.S. 656, 661–62, 105 S.Ct. 1544, 1548, 84 L.Ed.2d 590 (1985) (Secretary reduced demanded repayment "to reflect the benefits presumed to result from smaller pupil-teacher ratios in the readiness classes"). On remand, the Board should receive evidence of these imputed conference expenses claimed by California, and make a determination, attributable to the seven District-sponsored conferences, of what expenses, other than imputed rent, California would have incurred had the conferences been held at District facilities. Credit for these items is appropriate.

### B. *Multi–Purpose Conferences*

■ The Secretary disallowed expenditures for 23 conferences that the auditors found to be for general educational purposes rather than for Title I purposes ("multi-purpose conferences"). The auditors did not dispute that portions of these multi-purpose conferences may have been directly related to Title I purposes. Department regulations, however, only permit reimbursement of conference and meeting expenses "when the primary purpose of the meeting is the dissemination of technical information relating to the grant program," 34 C.F.R. pt. 74, App. C, pt. II, B.19c (1980), and when the training offered is "[d]irectly related to the Title I services to be provided during the school year." 34 C.F.R. § 200.75 (1981) (earlier version at 45

C.F.R. § 116.36(a) (1980)). The Secretary adopted and affirmed the Board's decision, which stated that "[a]genda submitted show the conferences to be of a general nature ... not *primarily* related to Title I purposes." (emphasis added).

We recently upheld the Secretary's decision to disallow the same type of expenditures, over the same objections California presented in this case. *California, Dep't of Educ. v. Bennett,* 833 F.2d 827, 832 (9th Cir.1987). At oral argument, California conceded that the multi-purpose conference expenditures at issue here are controlled by this decision. California admitted that the record in the present case contains no greater evidentiary support for its position than what we determined was inadequate in our previous *California v. Bennett* case. *See id.* We therefore affirm the Secretary's disallowance of California's expenditure of Title I funds for these multi-purpose conferences for the same reasons set forth in our earlier opinion. *Id*

### C. *Field Trips*

The Secretary set aside the Board's allowance of field trip expenditures. These field trips were all the trips charged to Title I by the District for fiscal years 1981 and 1982. There were a total of 3,320 field trips. For these trips, Title I was charged $454,955.

The Secretary did not take evidence or make his own findings of fact; thus, 20 U.S.C. § 2581(b) does not apply. Our review of the Secretary's decision, therefore, focuses on whether he had "good cause" to set aside the Board's decision regarding the field trips. *See* 20 U.S.C. § 1234a(d)(1). Without attempting to develop a complete definition of "good cause" in the context of 20 U.S.C. § 1234a(d)(1),[4] we find it suffi-

---

**3.** California's cost estimates include the fair market rental value of the District facilities where the conferences could have been held. Yet, the Department asserted that District facilities would be available for conference use without a rental charge. California has presented no evidence, nor has it argued seriously that the conferences in question could not have been held at available District facilities. Thus, the record supports the Department's contention that the facilities' rental costs presented by Cali-

fornia should not be included in the necessary base costs attributable to the conferences.

**4.** Courts have cautioned that the "good cause" exception appearing in the Administrative Procedure Act should be "narrowly construed and reluctantly countenanced." *See e.g., Mid–Tex Elec. Coop., Inc. v. Federal Energy Regulatory Comm'n,* 822 F.2d 1123, 1132 (D.C.Cir.1987). We do not apply this narrow construction to the good cause requirement in section 1234a(d).

cient for the present case to state that, at a minimum, "good cause" requires that the Secretary's decision not be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *see also Bell v. New Jersey*, 461 U.S. 773, 792, 103 S.Ct. 2187, 2198, 76 L.Ed.2d 312 (1983). Measured by this minimal standard, the Secretary did not show "good cause" for setting aside the Board's determination by which it allowed California's field trip expenditures.

The Secretary based his rejection on three grounds. He concluded the Board had misapplied the burden of proof, based its decision on improperly faulting the auditors' sampling techniques, and misinterpreted the regulations.

### 1. *Burden of Proof*

The Secretary determined that California's presentation to the Board had not met California's burden of proving that the challenged expenditures were allowable. Although Department regulations placed this burden on California, see 34 C.F.R. § 78.16 (1981), Congress has identified one circumstance under which a state does not have the burden of proving to the Board that challenged expenditures are allowable:

> The Board shall return to the Secretary for such action as he deems appropriate any final audit determination which, in the judgment of the Board, contains insufficient detail to identify with particularity those expenditures which are not allowable. *Unless the Board determines that a final audit determination lacks sufficient detail,* the burden shall be upon the State or local educational agency to demonstrate the allowability of

expenditures disallowed in the final audit determination.

20 U.S.C. § 1234a(b) (emphasis added).[5]

The final audit adopted and endorsed the findings and reasoning of the Department's audit report ("report"). The Department auditors randomly sampled 200 trips, on which they based their decision to disallow expenditures for the entire set of 3,320 trips. The propriety of disallowing expenditures for all trips based on the sample of 200 is not challenged. Of the 200 trips sampled, however, the report and final audit only described 24 trips. The report explained the basis for disallowing these 24 trips and then stated, without further substantiation, that these trips actually described were representative of the entire 200–trip sample. California responded to the report and final audit by producing more detailed descriptions of the educational benefits derived from the 24 field trips mentioned. California also produced sample school site needs assessments and argued that they should have been reviewed by the auditors before any disallowance was made.

In commenting on the procedures described in the report, the Board concluded:

> The costs and basis of the disallowance of the 200 field trips actually reviewed was not included in the audit report. Rather, the audit report contained a few samples specifically picked as exemplars to prove a point. Hence, [we] cannot review the determination as to the 200 field trips [sampled by the auditors] with any specificity.

The Board further stated that the record did not support the auditors' determination that none of the 200 field trips sampled was justified. On this basis, the Board allowed California's field trip expenditures.

---

*See generally* Jordan, *The Administrative Procedure Act's "Good Cause" Exemption,* 36 Admin. L.Rev. 113, 120–152 (1984).

**5.** The Board hears appeals from final audit determinations ("final audits"), which are issued by the Assistant Secretary on behalf of the Department. If the final audit is insufficient under the Department regulations, the Board chairperson must return it to the Department for proper modification. 34 C.F.R. § 78.12(b)

(1981). The regulations do not restrict the time at which a final audit may be returned to the Department. Therefore, the Board has the power to return a final audit to the Department at any time before rendering its decision. In this way, the statute and regulations achieve the same result: the state will not bear the burden of proof to overcome an expenditure disallowed in a final audit which is insufficient.

The Secretary, in rejecting this portion of the Board's decision, stated that California had not met its burden of proof before the Board, and that the Board did not recognize this shortcoming. Yet, the Board evidenced familiarity with the burden of proof provision in its conclusion regarding other expenses. It found "that California has not sustained its burden of proving that funds totaling $244,495 for training and conference expenses was [sic] properly spent."

■ From our review of the record, it appears the part of the Assistant Secretary's final audit which disallowed California's expenditure for field trips was rejected by the Board because it failed to meet the sufficiency requirements of 20 U.S.C. § 1234a(b) and 34 C.F.R. § 78.11(b)(2).[6] The Assistant Secretary recognized this problem. He stated: "If this final audit determination lacked sufficient detail, as the [Board] seems to imply, the proper remedy would have been to reject the final audit determination as not meeting the regulatory requirements in 34 C.F.R. § 78.11 and allowing [sic] the Assistant Secretary an opportunity to correct the alleged defect." The Secretary could have accomplished what the Assistant Secretary indicated would be a proper result if he had remanded the field trips question to the Board. Instead, he simply reversed the Board on this issue and concluded that it had misapplied the burden of proof. By statute, however, California did not have the burden "to demonstrate the allowability of expenditures disallowed in the final audit determination" if the final audit determination lacked sufficient detail. 20 U.S.C. § 1234a(b). The record indicates the final audit lacked sufficient detail. Therefore, the Board did not misapply the burden of proof, and the Secretary did not act

in accordance with law in setting aside the Board's determination on this basis. *See* 5 U.S.C. § 706(2)(A).

### 2. *The Auditors' Sampling Techniques*

A second reason cited by the Secretary in support of his partial reversal of the Board was that "[t]he [Board] based its decision not on a substantive review of the field trips in question but on the fact that the auditors extrapolated from a review of 200 randomly selected field trips to the full 3,320 field trips under audit." The Board, however, found that the 200-trip sample could not be adequately evaluated. The Board focused its objections on the quality of the sample and the inferences that it could support, not on the size of and extrapolation from the sample. The Board was concerned about the auditors' extrapolation from the 24 trips mentioned to the 200-trip sample. The Assistant Secretary agrees that extrapolation from the sample of 200 was not the problem. The Secretary's discussion of the Board's review of the 200-trip sample does not support, nor does it establish any cause, for reversing the Board on this ground.

### 3. *Special Versus General Needs*

The Secretary's third and final basis for reversing the Board's allowance of California's field trip expenditures was based on his interpretation of what would satisfy the regulations' requirements that Title I expenditures be focused on students' "special" educational needs. As described above, we give considerable deference to the Secretary's interpretation of his agency's regulations. *See California, Dep't of Educ. v. Bennett,* 833 F.2d 827, 830 (9th Cir.1987); *McCoog v. Hegstrom,* 690 F.2d 1280, 1284 (9th Cir.1982). Department regulations state that Title I funds shall be

---

6. We cannot accept the Assistant Secretary's unsupported assertion that "it is clear that the final audit determination was sufficient." "Good cause" under section 1234a(d)(1) is not established by a conclusory statement, without any articulation of the basis for it. "The agency must articulate a 'rational connection between the facts found and the choice made.'" *Bowman Transp., Inc. v. Arkansas–Best Freight Sys., Inc.,* 419 U.S. 281, 285, 95 S.Ct. 438, 441, 42

L.Ed.2d 447 (1974) (quoting *Burlington Truck Lines v. United States,* 371 U.S. 156, 168, 83 S.Ct. 239, 245, 9 L.Ed.2d 207 (1962)); *see also Railway Labor Executives' Ass'n v. ICC,* 784 F.2d 959, 964 (9th Cir.1986) ("An agency's determination is arbitrary and capricious when the agency fails to consider all relevant and important factors or does not articulate a satisfactory explanation for its decision.").

used "only for projects that are designed to meet the special educational needs of the eligible children." 34 C.F.R. § 200.52 (1981) (earlier version at 45 C.F.R. § 116a.22(b)(4)(iii) (1980)). Title I funds may not be used for a project "that has been designed to meet, or will have the effect of meeting, the general needs of—(1) a school; (2) the agency; (3) an entire grade; or (4) the student body at large in a school." *Id.* (earlier version at 45 C.F.R. § 116a.22(b)(6) (1980)).

In the final audit, the Assistant Secretary disallowed the field trip expenses because California had not provided information "that the field trips were designed to meet the special educational needs of educationally deprived children." The Assistant Secretary affirmed the findings of the Department's auditors, which were based on two District forms: one indicating the trip destination, and the other providing four lines for the teacher to indicate the trip's educational benefit. The auditors did not consider any needs assessment documents which identify the special needs of Title I students on which Title I monies should be focused. *See* 45 C.F.R. § 116a.21 (1980); 34 C.F.R. § 201.100, .102, .104 (1981); H.R. No. 95–1137, 95th Cong., 2d Sess. 23–24 (1978), *reprinted in* 1978 United States Code Cong. & Admin.News 4971, 4993–94.

■ The prohibition on using Title I funds to satisfy the "general" needs of a class, grade or school does not prohibit California from identifying as "special" those educational needs that Title I and non-Title I children share. Title I students differ from students generally because they come from low-income families and have been identified by the District as those most in need of supplemental educational assistance. *See* 20 U.S.C. §§ 2701, 2732(a)(1), 2733, 2734(b); 34 C.F.R. §§ 201.-70, .100–.105 (1981). As the Secretary admitted at oral argument, Title I children suffer from no unique educational handicap.

■ The Secretary's decision applied a definition of "special educational need" to the field trip expenditures that conflicts with the purpose and wording of Title I and other Department regulations. The Secretary's decision required California to show that the "special" educational needs of its Title I students were not shared by other students. This interpretation is inconsistent with the flexibility that Title I and the regulations offer local educational agencies such as the District to define special educational needs. *See* 20 U.S.C. §§ 2733(a), 2734(b); 34 C.F.R. § 201.70, .100–.105 (1981); *see also Bennett v. New Jersey*, 470 U.S. 632, 635, 105 S.Ct. 1555, 1557, 84 L.Ed. 2d 572 (1985) ("Congress left to local officials the development of particular programs to meet the needs of educationally disadvantaged children."); H.Rep. No. 95–1137, 95th Cong., 2d Sess. 4 (1978) (one of the "essential features" of Title I is "its flexibility at the local level"), *reprinted in* 1978 United States Code Cong. & Admin. News 4971, 4974. His interpretation is also inconsistent with the language of the regulations on which he relies. We therefore do not extend the normal deference to the Secretary's interpretation, see *McCoog v. Hegstrom*, 690 F.2d 1280, 1284 (9th Cir. 1982), and conclude that the Secretary's interpretation provides no support for the showing of good cause that he must make in order to set aside the Board's decision.

For the foregoing reasons we conclude that the Secretary did not show good cause in setting aside the Board's decision which allowed California's expenditure of Title I funds for the field trips.

### D. *Improper Rulemaking*

■ California also argues that, as a general matter, the Department's action in this case created several general rules regarding the allocation of Title I funds, which rules were adopted and applied without the proper notice and comment procedures. California maintains that the Department should have but did not satisfy the rulemaking procedures identified in 20 U.S.C. § 1232. This argument is without merit.

Section 1232 requires that the Secretary offer notice and comment in accordance with the rulemaking provisions in section

553 of the Administrative Procedure Act. 5 U.S.C. § 553. Section 553, however, does not apply to matters relating to grants. 5 U.S.C. § 553(a)(2) ("this section applies ... except to the extent that there is involved ... a matter relating to agency management or personnel or to public property, loans, grants, benefits, or contracts."); *see also Alcaraz v. Block,* 746 F.2d 593, 611 (9th Cir.1984) ("that statutory exception 'cuts a wide swath through the safeguards generally imposed on agency action'" (citation omitted)).[7]

## IV

## CONCLUSION

We affirm the Secretary's disallowance of California's expenditure of Title I funds for multi-purpose conferences.

We reverse the Secretary's disallowance of California's field trip expenditures. The Secretary did not show good cause for setting aside the Board's allowance of these expenses.

We remand to the Board for further proceedings the determination of the amount of food and lodging expenses properly attributable to participants who attended the two state-sponsored conferences in Anaheim, and who had an unreasonably long commute to and from the conference sites.

We also remand to the Board determination of the amount of credit California should receive for the necessary "imputed costs" which represent what the District would have had to spend to hold the seven District-sponsored conferences at its own facilities.

AFFIRMED in part, REVERSED in part, and REMANDED in part.